## A04A0980. EVANS v. THE STATE.
### (600 SE2d 671)

ELDRIDGE, Judge.

Following a bench trial in the State Court of Forsyth County, Nicole Beth Evans was found guilty of DUI — less safe driver; DUI — excessive blood alcohol content ("BAC"); failure to maintain a lane; and driving on a suspended license. She appeals, claiming error in the consideration of evidence obtained without benefit of *Miranda*;[1] the denial of her motion to suppress evidence found during an impound search of her car; and the consideration of a Georgia Crime Information Center ("GCIC") printout to establish age and notice of license suspension. Finding these claims to be without merit, we affirm.

1. In her first enumeration of error, Evans argues that the statutory definition of arrest contained in OCGA § 17-4-1[2] is so broad that it encompasses any situation in which a suspect is detained by law enforcement to the extent that the suspect is not free "to come and go as she pleases." Therefore, Evans argues, she was under the functional equivalent of arrest "from the moment the detaining officer directed her with flashing blue lights to pull to the side of the road," and the results of her field sobriety evaluations were inadmissible as given without benefit of *Miranda* warnings. We cannot agree.

The provisions of OCGA § 17-4-1 were made part of our original Code of 1863[3] and have long been interpreted as meaning an arrest is accomplished whenever the liberty of a person to come and go as he pleases is restrained, no matter how slight such restraint may be.[4] This remains the law. But over the years, case law has refined and clarified what constitutes an "arrest" for purposes of constitutional analysis.[5] In that regard, an investigative "detention" is not an "arrest" so as to trigger the constitutional protections embodied in *Miranda*.[6] As we have previously explained,

> When a person is placed in custody or under arrest at a traffic stop, the protection of *Miranda* arises; however, roadside

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[2] Actions constituting an arrest. An actual touching of a person with a hand is not essential to constitute a valid arrest. If the person voluntarily submits to being considered under arrest or yields on condition of being allowed his freedom of locomotion, under the discretion of the officer, the arrest is complete. OCGA § 17-4-1.

[3] Orig. Code 1863, § 4609.

[4] *Clements v. State*, 226 Ga. 66, 67 (2) (172 SE2d 600) (1970).

[5] *Berkemer v. McCarty*, 468 U. S. 420 (104 SC 3138, 82 LE2d 317) (1984).

[6] *Tolliver v. State*, 273 Ga. 785, 786 (546 SE2d 525) (2001).

questioning at a routine stop does not constitute a custodial arrest. A detained individual is not under arrest simply because, by leaving, he could be arrested for violating state law. Nor is he under arrest because an officer has discovered the commission of a traffic offense for which he could be arrested. The safeguards prescribed by *Miranda* become applicable only after a detainee's freedom of action is curtailed to a degree associated with formal arrest.[7]

On appeal, then, this Court must determine whether a challenged detention involves the degree of restraint associated with a formal arrest. In doing so, we apply an objective test to determine whether a reasonable person would feel so restrained as to equate the detention to a formal arrest.[8] Notably, a "reasonable person" has been defined as one "neither guilty of criminal conduct and thus overly apprehensive nor insensitive to the seriousness of the circumstances."[9]

Turning to the case before us, we find nothing in the record that indicates Evans should have been given *Miranda* warnings at any point prior to the time the detaining officer placed her under arrest for DUI. Evans has failed to demonstrate that, at any time between the initial stop and the arrest, she was subject to restraints comparable to those associated with formal arrest. Evans' statement made upon exiting her vehicle to perform sobriety exercises that, "I know you're going to take me in," demonstrates her apprehension, not the fact of arrest. At no point between the stop and arrest was Evans informed that her detention would not be temporary. And Evans' performance of field sobriety exercises does not support a contention that she was exposed to "custodial interrogation" at the scene of the stop.[10] Under the totality of the circumstances presented in this case, we conclude that Evans was neither under "arrest" nor in custody at the time in which she performed the field sobriety exercises at issue, and thus, *Miranda* plays no part in the admissibility of the results.

2. Evans next claims that, following her formal arrest, she was subject to improper interrogation without benefit of *Miranda*, rendering the results of such interrogation inadmissible. We find no violation of *Miranda*.

---

[7] (Citations omitted.) *Smith v. State*, 236 Ga. App. 548, 550 (512 SE2d 19) (1999), overruled on other grounds, *Smith v. State*, 272 Ga. 83 (526 SE2d 59) (2000).

[8] *Ayres v. State*, 259 Ga. App. 290, 292 (1) (576 SE2d 597) (2003).

[9] (Citation and punctuation omitted.) *Turner v. State*, 233 Ga. App. 413, 415 (1) (a) (504 SE2d 229) (1998).

[10] *Berkemer v. McCarty*, supra.

Following Evans' arrest, the officer read her implied consent warnings for suspects over age 21 and placed her in the back of his patrol car. Thereafter, during an impound search of Evans' car, the officer located an identification card that showed Evans' age as under 21. The officer returned to his vehicle, asked Evans her age, and learned she was under 21. The officer then read Evans the implied consent notice for suspects under age 21.

Based upon this series of events, Evans contends that the officer's inquiry about her age was an improper interrogation likely to produce an incriminating response, since her age was an "element" of the offense of underage DUI — excessive BAC. Thus, without benefit of *Miranda,* information obtained from the officer's inquiry was inadmissible at trial. However, questions regarding age, marital status, and address are routine questions that are generally exempted from *Miranda.*[11] Further, we reject Evans' contention that the officer's question was designed to "incriminate" her, when such was asked in order to give Evans the proper implied consent notice. Indeed, Evans had not yet taken an intoxilyzer test, and her BAC was unknown; accordingly, her age in relation to the quantum of proof necessary to demonstrate underage DUI — excessive BAC was not relevant at the time of the officer's inquiry. At the time of inquiry, the officer was arresting Evans for DUI — less safe driver, and her age is not an "element" of such offense.

3. Evans challenges the validity of the impound search of her vehicle as unnecessary, since the arresting officer failed to ascertain whether alternative arrangements were available to Evans. We find the search appropriate under the facts of this case. Evans' vehicle was stopped by the side of Georgia 400 at 4:00 a.m.; she was the lone occupant. Evans did not testify, and the only evidence is that she requested the vehicle be locked. There is no evidence that Evans asked for any alternative disposition to impoundment. Absent a *reasonable* request unrestrained by other considerations, law enforcement officers are not obliged to offer impound alternatives to those they place under arrest. The circumstances of this case support a finding that impoundment was reasonably necessary to safeguard the car and its contents.[12]

4. We find the State complied with the requirements for the admission of the GCIC report as established by OCGA § 24-3-17 and our decision in *Worthy v. State.*[13] Accordingly, Evans' challenge to the

---

[11] *Pennsylvania v. Muniz,* 496 U. S. 582, 601 (110 SC 2638, 110 LE2d 528) (1990); *Baird v. State,* 263 Ga. 868, 871 (1) (440 SE2d 190) (1994).

[12] *Scott v. State,* 232 Ga. App. 337, 339 (501 SE2d 255) (1998).

[13] *Worthy v. State,* 252 Ga. App. 852, 853 (1) (557 SE2d 448) (2001).

admission of the report is without merit. Evans also argues that the GCIC record was never shown to be hers; however, "[c]oncordance of name alone is some evidence of identity. Identity of name presumptively imports identity of person, in the absence of any evidence to the contrary."[14] Here, the GCIC printout bore Evans' name, and she did not deny that it was hers. Accordingly, the evidence is sufficient to show identity for purposes of the admission of the GCIC printout.[15]

*Judgment affirmed. Ruffin, P. J., and Adams, J., concur.*

DECIDED MAY 25, 2004 —
RECONSIDERATION DENIED JUNE 8, 2004 — 

*Banks, Stubbs, Neville & Cunat, Rafe Banks III,* for appellant.
*Leslie C. Abernathy, Solicitor-General, Michael T. Saul, Amy K. Radley, Assistant Solicitors-General,* for appellee.

[14] (Citation and punctuation omitted.) *Gibson v. State,* 243 Ga. App. 610, 612 (2) (b) (533 SE2d 783) (2000). See also OCGA § 24-4-40 (a).
[15] Evans' additional argument raised in a "Supplemental Reply Brief" will not be considered. *Felix v. State,* 271 Ga. 534, 539, n. 6 (523 SE2d 1) (1999).